UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| AMANDA LYNN VOGELGESANG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-146-TLS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| ACTING COMMISSIONER OF THE | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Amanda Lynn Vogelgesang seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability and disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied her Social Security benefits and erred by failing to build a logical bridge between all of the Plaintiff's impairments and her residual functional capacity, improperly holding the Plaintiff's failure to comply with treatment plans or otherwise seek consistent treatment against her credibility, failing to give the appropriate weight to a state agency psychological examination, and by overemphasizing the Plaintiff's daily activities.

**BACKGROUND**

On October 5, 2015, the Plaintiff filed a Title II application for disability and disability insurance benefits, alleging disability beginning on December 1, 2014. (R. 19.) Her claims were denied initially, and upon reconsideration. (*Id.*) On August 8, 2016, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ). (*Id.*) Charles McBee,

an impartial vocational expert (VE) also appeared. (*Id.*) On February 9, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review. (R. 1–3.)

On April 10, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA since her alleged onset date, December 1, 2014. (R. 21.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including a history of stage IV thyroid cancer and myxoma tumor in the left thigh. (*Id.*) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of

work. (*Id.*) The ALJ also found that the Plaintiff had multiple non-severe impairments, including headaches, a low vitamin D level, and mental impairments, including anxiety, depression, and attention deficit hyperactivity disorder, but that "the claimant is, at most, only mildly limited by her mental impairments in her ability to perform activities of daily living, maintain social functioning, and sustain concentration, persistence, or pace." (R. 21–23.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to "perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a)." (R. 24.) The ALJ imposed no other limitations on the Plaintiff's RFC.

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of her alleged onset date. (R. 19–29.) The ALJ evaluated the objective medical evidence and the Plaintiff's subjective complaints and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 25.) But,

3

the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The Plaintiff testified that she would miss at least 9 days of work per month, that she suffers from left leg pain at a level 8, that she has spasms in her legs to or 3 nights per week, that she is able to lift only a case of water, stand for 15–20 minutes at a time, sit for 20 minutes at a time, and walk for 20–25 minutes at a time. (R. 24.) She also testified that she felt sick in some way on a daily basis and that she had difficulty squatting, kneeling, climbing stairs, completing tasks, and using her hands. (R. 25.) The Plaintiff's mother stated that the Plaintiff sometimes needed to lie down, did not complete tasks, experienced cramping in her left leg, and had difficulty squatting, kneeling, and walking more than a quarter of a mile. (*Id.*)

The ALJ also cited other parts of the record that did not support the Plaintiff's testimony, including that the Plaintiff continued to work after she was treated for her severe impairments, suggesting that she was not as limited as alleged; and that she "is able to engage in a rather full range of activities," noting that she is the primary caregiver for her two children, has friends, can drive, takes her children to and from school, helps her children with their homework, makes dinner sometimes, does laundry, does some shopping and housework, helps care for the family pets, visits her grandparents, cares for her personal needs, goes out alone, pays bills, and counts change. (*Id.*) Turning to the objective medical evidence, the ALJ noted that Plaintiff had not required surgery on her left leg since her alleged onset date, nor did she take any medication for her left leg issues on a regular or consistent basis and only once sought emergency room treatment since her alleged onset date. (*Id.*) The ALJ also found that the Plaintiff's physical examination findings were "largely within normal limits." (R. 26.) Thus, the ALJ concluded that

"[t]he documentation of such findings, or the absence of such limitations of function within the objective medical findings, undermine, fail to support, or are inconsistent with allegations for greater limitations of function lasting twelve months in duration," which "undermine[s] the weight accorded to testimony and allegations." (*Id.*) The ALJ also found that the Plaintiff's lack of ongoing mental health treatment through a psychiatrist, counselor, or psychologist tended to "undermine allegations for a severe mental impairment[] imposing significant limitation of function for twelve months in duration and despite treatment." (*Id.*) The ALJ stated that "there is no medical opinion of record to fully corroborate the allegations made by the claimant and her mother or to support a more restrictive assessment of the claimant's physical residual functional capacity than acknowledged by the undersigned." (R. 27.) Ultimately, the ALJ concluded that "[t]he claimant failed her burden of establishing a logical bridge between her allegations, the record and greater limitations of function lasting twelve months in duration." (*Id.*)

The Plaintiff has past relevant work as a cashier, which is unskilled, light work. (*Id.*) The ALJ found that the Plaintiff was unable to perform her past relevant work. (*Id.*) Relying on the VE's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 28.) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of her alleged onset date. (R. 29.)

**STANDARD OF REVIEW**

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if

supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be

affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the ALJ erred by failing to build a logical bridge between all of the Plaintiff's impairments and her residual functional capacity, improperly holding the Plaintiff's failure to comply with treatment plans or otherwise seek consistent treatment against her credibility, failing to give the appropriate weight to a state agency psychological examination, and by overemphasizing the Plaintiff's daily activities. Most of the Plaintiff's arguments attack the ALJ's credibility determination.

### A. Credibility Determination

The Court may not overturn the ALJ's credibility determination unless it is "patently wrong." *See Elder*, 529 F.3d at 413–14. "An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong." *Pinder v. Astrue*, No. 3:09-CV-363, 2010 WL 2243248, at *4 (N.D. Ind. June 1, 2010) (*citing Craft*, 539 F.3d at 678). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). However, "a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (citing *Terry*, 580 F.3d at 477); *Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003); *Salaiz v. Colvin*, 202 F. Supp. 3d 887, 893 (N.D. Ind. 2016). "The determination of credibility must be supported by the evidence

and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft*, 539 F.3d at 678.

Social Security "regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a bases for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005). "The ALJ should not mechanically recite findings on each factor, but must give specific reasons for the weight given to the individual's statements." *Evans v. Astrue*, No. 3:10-CV-432, 2012 WL 951489, at *11 (N.D. Ind. Mar. 20, 2012).

In discounting the Plaintiff's testimony, the ALJ noted that the Plaintiff continued to work after being treated for her two severe impairments, that the Plaintiff engages in "a rather full range of activities," and that the Plaintiff's testimony is not corroborated by the medical record.

### 1. Work History

The ALJ found that the fact that the Plaintiff worked after she was treated for her two severe impairments "suggest[ed] that she was not as limited as she and her mother alleged," despite the fact that none of the referenced work qualified as SGA. (R. 25.) "There is no inherent inconsistency in being both employed and disabled." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016). "An ALJ is not statutorily required to consider a claimant's work history, but a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) (internal

quotation omitted). "The fact that someone is employed is not proof positive that he is not disabled, for he may be desperate and exerting himself beyond his capacity, or his employer may be lax or altruistic." *Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995); *see also Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003) (finding argument "would be correct were there a logical incompatibility between working full time and being disabled from working full time"); *Ghiselli*, 837 F.3d at 778 ("Persisting in looking for employment even while claiming to suffer from a painful disability might simply indicate a strong work ethic or overly-optimistic outlook rather than an exaggerated condition."). "A positive work history makes a claimant *more* credible, and a desire to resume work similarly makes a claimant more credible, not less[.]" *Cullinan v. Berryhill*, 878 F.3d 598, 604 (7th Cir. 2017) (internal citations omitted). Thus, the Court finds that the ALJ inappropriately held the Plaintiff's continued employment against her instead of weighing it in her favor. Although the ALJ may ultimately come to the same conclusion regarding the Plaintiff's credibility, on remand, the ALJ should weigh the Plaintiff's work history positively rather than as proof that she is not disabled.

### 2. *Daily Living Activities*

The ALJ's credibility determination also rested on the Plaintiff's daily living activities. The ALJ noted that "the claimant is able to engage in a rather full range of activities as she is the primary caregiver for her 2 children (ages 9 and 13), has friends, and is able to drive, take her children to and from school, help her children with their homework, make dinner sometimes, do laundry, do some shopping and housework, help care for the family pets, visit her grandparents, care for her personal needs . . . go out alone, pay bills, and count change[.]" (R. 25.) The Plaintiff

argues that the ALJ placed undue weight on her ability to conduct daily living activities without considering the assistance she required to perform them.

The Seventh Circuit has emphasized that there are "critical differences between activities of daily living and activities in a full-time job" including flexibility in scheduling, possible help from family members, and lack of minimum performance standards; and "[t]he failure to recognize these differences is a recurrent . . . feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

In this case, the ALJ failed to consider the modifications and assistance that the Plaintiff required to complete the referenced daily activities. For example, the Plaintiff testified that at least two days out of the week, her mother cooks dinner or does the laundry. (R. 53.) She testified that she "ha[s] to live with [her] mother at this point" because of her problems with confusion and memory. (R. 62–63.) The ALJ did not even acknowledge the Plaintiff's testimony on this issue and therefore "ignored [the Plaintiff's] qualifications as to *how* [she] carried out those activities." *Craft*, 539 F.3d at 660 (emphasis in original). Courts have repeatedly found fault with decisions where the ALJ noted that the claimant could perform daily activities but failed to examine the physical or mental consequences of performing those activities and the claimant's need for assistance or modifications. *See, e.g.*, *Sneed v. Berryhill*, No. 2:16-CV-195, 2017 WL 4325303, at *3 (N.D. Ind. Sept. 29, 2017) ("If the ALJ wishes to hold Plaintiff's daily activities against her, he must . . . discredit Plaintiff's claims of how much her children help with the activities."); *Herrold v. Colvin*, No. 2:13-CV-360, 2015 WL 1243293, at *6 (N.D. Ind. Mar. 17, 2015) ("[T]he Seventh Circuit has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of his personal hygiene, children, or household chores.") (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009)); *see also Rogers v. Comm'r of Soc.*

*Sec.*, 486 F.3d 234, 248–249 (6th Cir. 2007) (finding fault where the ALJ "fail[ed] to examine the physical effects coextensive with [the] performance" of daily activities and "failed to note or comment upon the fact that [the claimant] receive[d] assistance of many everyday activities and even personal care from her children"). On remand, when considering the Plaintiff's daily living activities, the ALJ should ensure that he takes into account any assistance or modifications the Plaintiff requires to perform such daily living activities.

3. *Objective Medical Evidence*

The remaining reason the ALJ cited for discounting the Plaintiff's subjective testimony was that her testimony was not supported by the medical record. But, the Seventh Circuit, and this District, have rejected this approach. *See, e.g.*, *Villano v. Astrue*, 556, F.3d 558, 562 (7th Cir. 2009) ("[T]he ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it."); *Myles v. Astrue*, 585 F.3d 672, 677 (7th Cir. 2009) (same); *see also Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) (same); *Thomas v. Colvin*, 534 F. App'x 546, 552 (7th Cir. 2013) (same); *Boyd v. Barnhart*, 175 F. App'x 47, 50 (7th Cir. 2006) (reversing and remanding for insufficient credibility determination where the Commissioner "defended the ALJ's decision by relying on the objective medical evidence, the testimony of the vocational expert, and a brief discussion of [the claimant's] daily living activities"); *Salaiz*, 202 F. Supp. 3d at 893–94 ("The ALJ erred when assessing the Plaintiff's credibility because she relied entirely on medical evidence . . . ."); *Vercel v. Colvin*, No. 2:15-CV-71, 2016 WL 1178529, at *4 (N.D. Ind. Mar. 28, 2016) (Although the "ALJ is not required to give full credit to every statement of pain made by the claimant . . . a claimant's statements regarding symptoms or the effect of symptoms on his ability

11

to work 'may not be disregarded solely because they are not substantiated by objective evidence.'") (quoting SSR 96-7p at *6).

In fact, "the whole point of the credibility determination is to determine whether the claimant's allegations are credible *despite* the fact that they are not substantiated by the objective medical records." *Stephens v. Colvin*, No. 1:13-CV-66, 2014 WL 1047817, at *9 (N.D. Ind. Mar. 18, 2014) (emphasis in original); *see Thomas*, 534 F. App'x at 551 (The ALJ's argument "that [the claimant's] alleged daily activities 'cannot be objectively verified with any reasonable degree of certainty' [] ignores the fact that [the claimant's] daughter (who forced [the claimant] to move in with her so that she could provide care) confirmed the type and extent of [the claimant's] daily activities.").

Thus, the Court cannot say that the ALJ built a logical bridge regarding the Plaintiff's credibility and is unable to meaningfully review the ALJ's analysis.

**B.     RFC Analysis**

Although the Court is unable to meaningfully review the ALJ's decision due to the errors in the credibility determination, the ALJ's conclusions regarding the Plaintiff's RFC are problematic for another reason: The ALJ appears to have used the wrong standard at step four of the analysis.

In the step four analysis, the ALJ stated that the lack of objective medical evidence "tend[ed] to undermine allegations for a severe mental impairment[] imposing *significant* limitations of function *for twelve months in duration* and despite treatment," and that "[t]he claimant failed her burden of establishing a logical bridge between her allegations, the record and greater limitations of function lasting *twelve months in duration*." (R. 26–27 (emphasis

added).) However, whether an impairment imposes a significant limitation of function for twelve months is not the question at this step; that is the question at step two. At step four, "the ALJ need[s] to consider the *aggregate* effect of this entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original). "The fact that [an impairment] standing alone is not disabling is not grounds for the ALJ to ignore [it] entirely—it is [its] impact in combination with [the claimant's] other impairments that may be critical to his claim." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). That is, "a competent evaluation of [a claimant's] application depends on the total effect of all his medical problems." *Golembiewski*, 322 F.3d at 918; *see also Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) ("As we—and other circuits—have emphasized repeatedly . . . the *combined* effects of the applicant's impairments must be considered, including impairments that considered one by one are not disabling.").

"A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted); *see also Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) (finding that "failure to consider the cumulative effect of impairments not totally disabling in themselves was an elementary error"); *Terry*, 580 F.3d at 477 (noting that even where impairments would "not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether"); *Verlee v. Astrue*, No. 1:12-CV-45, 2013 WL 1760810, at *5 (N.D. Ind. Apr. 24, 2013) (remanding where "ALJ failed to discuss, and effectively ignored, the Plaintiff's" non-severe impairments when determining the Plaintiff's RFC).

The ALJ's opinion does not indicate full consideration of the aggregate effect of the Plaintiff's impairments, both severe and non-severe. In fact, by focusing on whether the

13

Plaintiff's impairments imposed significant limitations lasting for twelve months, the ALJ's opinion demonstrates a fundamental misunderstanding of the analysis that is required at step four. Therefore, on remand, the ALJ should also ensure that the aggregate of the Plaintiff's impairments, both severe and non-severe, are fully considered when determining the Plaintiff's RFC.

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case. Because the Court is remanding on these issues, it need not consider the reminder of the parties' arguments.

SO ORDERED on May 4, 2018.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT